IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LARRY JEFFERSON GREEN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) CASE NO. 1:20-CV-568-WKW-CSC |
| | ) |
| | ) |
| ADAM ZHEA, et. al., | ) |
| | ) |
| Defendants. | |

### RECOMMENDATION OF THE MAGISTRATE JUDGE

#### I.     INTRODUCTION

Larry Jefferson Green, an indigent state inmate who is housed at the Elba Work Release Facility, in Elba, Alabama, filed this 42 U.S.C. § 1983 action on August 6, 2020, complaining that that his arrest on March 25, 2017, and subsequent prosecution for receipt of stolen property in Houston County was unlawful.  Specifically, he claims because the Defendant police officers, Corporal Austin Nowell, Sergeant and Investigator Adam Zeh and Sergeant David Asbill, all employed with the Houston County Sheriff's Department ("the Defendants"), had no probable cause to detain, search and arrest him.  Thus, he claims they are liable to him for his false arrest. ("False Arrest Claim").  He also claims that the Defendants participated in the wrongful prosecution against him because there were no grounds to prosecute him with receipt of stolen property since it was not produced. ("Malicious Prosecution Claim").  He further alleges that Defendant Asbill, as supervisor, wrongly approved the false arrest and malicious prosecution against him. ("Liability based on Supervisory Responsibility").  Finally, he claims that these Defendants collectively conspired against him to charge him with stolen property that did not exist.

("Conspiracy Claim"). He seeks monetary and injunctive relief for the alleged violations of his constitutional rights. (*See,* Complaint, as amended, Docs. 1, 24, 29)

The Defendants filed special reports (Docs. 15, 19, 44), which included relevant evidentiary materials in support of these reports, including affidavits addressing the claims presented by Green, and prison records. In these documents, Defendants deny the claims against them. After reviewing the special reports and exhibits, the court issued an order on to file a response to the Defendants' special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials. This order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 45 at pp. 2-3). Plaintiff filed a response on July 1, 2021. (Doc. 46).

The Complaint, as amended, alleges claims as follows: (1) False Arrest; (2) Malicious Prosecution; (3) Conspiracy. He also alleges that Deputy Sheriff David Asbill is liable to him in his supervisory capacity for his false arrest and malicious prosecution. (Docs. 1, 24, and 29). Pursuant to the directives of the order entered on June 8, 2021, the court now treats the Defendant's special report and supplements thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the Defendants. (Doc. 45).

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Wilson's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Wilson has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the Defendants.

## III. DISCUSSION

### A. FACTS

On March 12, 2017, Defendant Investigator Zeh and Defendant Nowell, separately responded to a call to investigate a report of property stolen from a residence. (Doc. 15-1 at pp. 13-14). The victim stated that multiple items were taken from her residence including televisions and an I-pad. The victim stated that a window air conditioning unit had been pushed into a room and a door to the residence that she had left locked was open. The victim stated that she observed the Plaintiff leaving her residence. (Docs. 15-1 at pp. 13-14, 19; 15-2 at pp. 1-2).

Later, Investigator Zeh interviewed a witness on March 24, 2017. The witness stated that the Plaintiff brought property to her home that belonged to the victim. The witness also stated that the Plaintiff admitted to taking these items from the victim's residence. Based upon Defendant Zeh's knowledge of the statements from the victim and the witness, he testified that he believed

that he had probable cause to apply for an arrest warrant for the Plaintiff.  He further testified that he applied for this warrant based upon facts that he believed to be true and did not intentionally lie or misrepresent any facts in the application for this warrant.  (Doc. 15-2 at p. 2).  A warrant was issued for Plaintiff's arrest for first degree receipt of stolen property on March 24, 2017.  On March 25, the Plaintiff was arrested by Defendant Austin Nowell for receipt of stolen property.  *Id.*  Finally, Defendant Zeh denied the claims against him and denied that he had any further involvement with the Plaintiff's criminal prosecution or incarceration.  (Doc. 15-2 at pp. 1-2)

Defendant Asbill denied Plaintiff's claims against him and testified that he had no involvment with Plaintiff during the course of his arrest.  Specifically, he did not report to the scene, did not interview any witness, and did not discuss the investigation, the issuance of the criminal warrant or the bringing of criminal charges with either Defendant Nowell or Zeh.  His only involvement with the criminal case against Plaintiff was, as shift supervisor, to review the report to be sure it was properly formatted before its submission to the records division.  (Doc. 44-1 at p. 2).

Likewise, Defendant Nowell denied the claims against him.  (Doc. 44-2 at p. 1).  He further testified that on March 12, 2017, he responded to a call of stolen property from a residence and interviewed the victim.  The victim reported to him that multiple items were taken from her residence including televisions and an I-pad. and that a window unit had been pushed into the room and a door to the residence that she had left locked was open.  The victim also reported that she observed the Plaintiff leaving the area near her residence.  (Docs. 15-11 at pp. 13,14; 44-2 at pp. 1-2).  In addition, Defendant Nowell testified that he interviewed no other witness, did not participate in securing the warrant for Plaintiff's arrest, and did not discuss the investigation into Plaintiff's actions, the warrant or the criminal charges against him with Defendants Nowell or Zeh.

(Doc. 44-2 at p. 2). Finally, Defendant Nowell stated that after he arrested Plaintiff, pursuant to a valid arrest warrant on March 25, 2017, he had no further involvement with the Plaintiff's criminal prosecution or incarceration. *Id.*

**B. OFFICIAL CAPACITY**

To the extent Plaintiff lodges claims against the Defendants in their official capacities and seeks monetary damages, these Defendants are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. *Id.* Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted). Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996). Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit. *Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress

abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir.1990)).

In light of the foregoing, all Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity). Accordingly, all claims against Defendants in their official capacities for monetary damages are due to be dismissed.

## C. FALSE ARREST

Plaintiff asserts that the Defendants violated his constitutional right to be free from an unlawful arrest which he claims was based on a warrant obtained without probable cause on March 24, 2017. (Doc. 1). At the outset the Court recognizes that this claim is due to be summarily dismissed because it is barred by the statute of limitations. *See Lufkin v. McCallum,* 956 F.2d 1104, 1106 (11th Cir. 1992) (holding Alabama's general two-year statute of limitations, *see* Ala. Code § 6-2- 38(l) (1975), applies to suits filed under 42 U.S.C. § 1983). The Plaintiff filed this action on August 8, 2020. Because this claim was not filed on or before March 25, 2019, it is time barred. However, as an alternative basis for dismissal and because probable cause is relevant to the other claims in this action, the Court will address the merits of the Plaintiff's false arrest claim.

The Plaintiff claims that the Defendants had no probable cause to arrest him. Indeed, "[t]he Fourth Amendment's guarantee against unreasonable searches and seizures encompasses the right

7

to be free from arrest without probable cause." *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).

> To establish a violation of the Fourth Amendment, [a plaintiff] must demonstrate that [his] arrest was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) ("Seizure alone is not enough for § 1983 liability; the seizure must be unreasonable.") (quotation marks omitted). An arrest is unreasonable if it is not supported by probable cause. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004). "Probable cause is defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Id*. (citing *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

*Walker v. City of Hunstville, Ala.*, 310 F. App'x 335, 337 (11th Cir. 2009). "An arrest without a warrant and lacking probable cause violates the Constitution and can underpin a § 1983 claim, but the existence of probable cause at the time of arrest is an absolute bar to a subsequent constitutional challenge to the arrest." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010).

"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends upon the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). It is well-settled that "probable cause is a flexible, common-sense standard. . . . [I]t does not demand any showing that [the officer's belief an offense has been or is being committed] is correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983). Probable cause to arrest is present when the arrest is "objectively reasonable based on the totality of the circumstances. . . . This standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. . . . Although probable cause requires more than suspicion, it does not require convincing proof . . . and need not reach the [same] standard of conclusiveness and probability as the facts necessary to support a

conviction." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks and citations omitted); *Brown*, 608 F.3d at 734 ("Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed."); *see also Illinois v. Gates*, 462 U.S. 213, 232 (1983) ("[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules."). "Whether probable exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) (citing *Pringle*, 540 U.S. at 371).

"To determine whether an officer had probable cause to arrest an individual, [federal courts] examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Pringle*, 540 U.S. at 371 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996). In making this determination, a court must examine the elements of the charge(s) on which the plaintiff was arrested as the question of "[w]hether a particular set of facts gives rise to probable cause . . . to justify an arrest for a particular crime depends, of course, on the elements of the crime." *Crosby*, 394 F.3d at 1333.

It is undisputed that the Plaintiff was arrested pursuant to a warrant, which was issued March 24, 2017. On March 12, 2017, Defendant Zeh responded to a call to investigate a report of property stolen from a residence. During the investigation, the victim stated she observed Plaintiff leaving her residence after she discovered that multiple items were taken from her residence including televisions and an I-pad. The victim also stated that a window air conditioning unit had

been pushed into a room and a door to the residence that she had left locked was open. (Docs. 15-2 at pp. 1-2; 15-1 at p. 13-14).

On March 24, 2017, Defendant Zeh interviewed a witness who told him the Plaintiff brought property (specifically an I-pad and some rings) to her home which belonged to the victim and that the Plaintiff admitted taking these items from the victim's residence. (Doc. 15-2 at p. 2; 15-1 at p. 19). The witness filed an affidavit confirming this testimony, but claiming that Plaintiff never brought any televisions to her house. (Doc. 1 at pp. 4-5). Based upon Defendant Zeh's knowledge of the statements from the victim and the witness, he testified that he believed he had probable cause to seek an arrest warrant for the Plaintiff. (Doc. 15-2 at p. 2; 15-1 at p. 19). He further testified that he applied for this warrant based upon facts which he believed to be true, and he did not intentionally lie or misrepresent any facts in the application for this warrant. (Doc. 15-2 at p. 2)

Based upon Defendant Zeh's good faith representations to the state court which established probable cause, a warrant was issued on March 24, 2017, and the Plaintiff was arrested by Defendant Nowell, pursuant to that warrant, on March 25, 2017. *Id.* Thus, the Court concludes that the undisputed facts in this action demonstrate that Plaintiff was arrested pursuant to a warrant which was supported by probable cause based on an investigation by Defendant Zeh which produced a statement from the victim of the crime placing Plaintiff at the scene and a statement by a witness that Plaintiff possessed certain of the stolen items and admitted taking them from the victim's house. (Doc. 15-2 at pp. 1-2). Accordingly summary judgment is due to be granted on this claim. *See Crosby,* 394 F.3d at 1332.

### D.  MALICIOUS PROSECUTION

In order to state a claim for malicious prosecution against Defendants, Plaintiff must show "(1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami,* 382 F. 3d 1220, 1234 (11th Cir. 2004) (citations omitted). Under the first prong, the elements of common law malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood v. Kesler,* 323 F.3d 872, 878 (11th Cir. 2003) (citations omitted).  As to the second prong, the Fourth Amendment requires that a warrant for an arrest be supported by "sufficient information to establish probable cause." *Holmes v. Kucynda,* 321 F. 3d 1069, 1083 (11th Cir. 2003).  Indeed, Plaintiff produced no evidence showing a favorable termination of any criminal proceeding against him. *Thompson v. Clark,* 142 S.Ct. 1332 (2022).  Based upon the discussion at *supra,* pp. 7-10 concerning the facts establishing probable cause for the issuance of the warrant for Plaintiff's arrest, the Court concludes that summary judgment is due to be granted in favor of the Defendants on Plaintiff's malicious prosecution claim. *Holmes,* 321 F.3d at 1083.

### E.  SUPERVISORY RESPONSIBILITY

Plaintiff claims that Defendant Asbill is liable to him for false arrest and malicious prosecution based upon his supervisory responsibilities.  (Doc. 24 at pp. 1-2).   This claim fails because as stated above, the claims for false arrest and malicious prosecution, upon which supervisory responsibility is premised, lack merit. *See supra* at pp.7-11.  Furthermore, the law is well established; supervisory officials cannot be held liable in § 1983 actions under any theory of

11

respondeat superior or vicarious liability.  *See, Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994).  Accordingly, summary judgment is also due upon Plaintiff's claims for false arrest and malicious prosecution based upon a theory of respondeat superior.

## F. CONSPIRACY

The Plaintiff alleges that the Defendants conspired against him by falsely arresting him based upon a warrant unsupported by probable cause.  To survive summary judgment the Plaintiff must demonstrate the following: 1) active participation of all the Defendants in the events leading up to the alleged constitutional violation; 2) the Defendants "acted in concert" when the constitutional violation was committed; and 3) the record is replete with allegations that the Defendants communicated with one another and actively participated with one another leading up to and during the event in question.  *Johnson v. Conway,* 2013 WL 5493380 * 5 (N.D. Ga. 2013).  Further, the Eleventh Circuit has explained that "the linchpin for conspiracy is agreement which presupposes communication."  *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty.,* 956 F.2d 1112, 1122 (11th Cir. 1992).

The Court concludes that the Plaintiff's conspiracy claim fails for two reasons.  First, as discussed *supra*, at pp. 7-11, the Plaintiff has failed to demonstrate that a question of fact exists on either his false arrest or malicious prosecution claims which would prevent summary judgment against him.  Second, there is no evidence of continuous or active communication and participation between the Defendants concerning the process for securing the warrant for Plaintiff's arrest or for the subsequent arrest based on this warrant. (Doc. 15-2 at pp. 1-3; Doc. 44-1 at p.2; Doc. 44-2 at pp.1-2).  Accordingly, the Court concludes that the Plaintiff's conspiracy claim fails on its merits.

For the above stated reasons, it is the RECOMMENDATION of the Magistrate Judge that

1. The Defendant's motions for summary judgment (Docs. 15, 19 and 44) be GRANTED.

2. Judgment be GRANTED in favor of the Defendants.

3. This case be DISMISSED with prejudice.

4. Costs be taxed against the Plaintiff.

On or before **August 17, 2023**, the plaintiff may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which he objects. Frivolous, conclusive or general objections will not be considered by the District Court. The plaintiff is advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993)("When the magistrate provides such notice and a party still fails to object to the findings of fact and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 3rd day of August, 2023.

    /s/ Charles S. Coody  
CHARLES S. COODY  
UNITED STATES MAGISTRATE JUDGE